UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REDIS MINA,

v.     Case No. 8:05-cr-240-T-24MSS
       8:06-cv-1865-T-24MSS

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Defendant Redis Mina's amended motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255 (Doc cv-4;cr-135).

BACKGROUND

On August 9, 2005, Mina pled guilty, pursuant to a written plea agreement, to count two of a two-count indictment. Count two charged Mina with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C. § § 1903(a), 1903(g), and 1903(j); 21 U.S.C. 960(b)(1)(B)(ii). (Doc. cr-44[Plea Agreement]; cr-134 [Change of Plea Hearing]; cr-76 [Judgment]).

The written plea agreement contained an appeal waiver that read:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence

> violates the Eighth Amendment to the Constitution; provided, however, that if the Government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

(Doc. cr-44 at 13). On October 14, 2005, the Court sentenced Mina to one hundred and twenty-one months incarceration as to count two of the indictment. (Doc. cr-76) Count one was dismissed at the Government's motion. Judgment was entered that day, October 14, 2004. Mina did not appeal the conviction and sentence.

On October 10, 2006, Mina filed a timely motion to vacate. The Court ordered Mina to file an amended motion to vacate, which he did, on January 26, 2007, raising four grounds for relief. A review of the record demonstrates that, for the following reasons, Mina's motion to vacate must be **DENIED**.

## Discussion

### Ground One

Mina alleges that his counsel was ineffective for failing to (A) explain the consequences of a guilty plea; (B) request an evidentiary hearing; (C) present a downward department for collateral consequences pursuant to 18 U.S.C. § 3553(a) and (b), USSG § 5K2.0(a)(1), (2), (3), and (4); (D) argue against the mandatory sentencing scheme that is now unconstitutional; (E) attain a minor or minimal role as promised and to receive any leniency or benefits for entering into a plea agreement that yielded no benefits; and (F) request proof of criminal jurisdiction, subject matter jurisdiction, territorial jurisdiction and exclusive jurisdiction.

### Standard of Review for Effective Assistance of Counsel

To prevail on a claim alleging ineffective assistance of counsel, Mina must meet the

two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a defendant to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the Court need not make a ruling on the performance component.

The two-pronged *Strickland* test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial. When a client pleads guilty, counsel need only provide his client with an understanding of the law in relation to the facts, so that the defendant may make an informed and conscious choice between accepting the prosecution's offer and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client.

The second prong of the *Strickland* test focuses on whether counsel's alleged constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, the defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's alleged errors, the defendant would not have pled guilty and would have insisted on going to trial. *Id.*

Mina's Claims

First, Mina alleges that counsel was ineffective for failing to explain the

consequences of a guilty plea. In his original motion to vacate, (Doc. cv-1) Mina phrased this claim as "The defendant argues that his lawyer failed in his obligatory duties in that he did not explain the consequences of a plea agreement prior to its signing."  If what Mina means is that his attorney did not go over the plea agreement with him prior to his signing it, this claim has no merit.  At the change of plea hearing, after interpreter Reynaldo Toledo and Mina were sworn, Mina stated that his attorney had explained the plea agreement to him and that he had a "full opportunity to discuss the plea agreement with his attorney" before he signed it. (Doc. cr-134 at p. 7)

If on the other hand, Mina is contending that his counsel was ineffective for failing to explain the consequences of a guilty plea, his claim fails because he cannot show prejudice. The United States Magistrate Judge went over the entire plea agreement with Mina, page by page and explained the ramifications of his pleading guilty.  (Doc. cr-134 at pp. 8-26).

The Magistrate Judge explained the rights Mina was giving up by pleading guilty, including the right to a trial by jury. (Doc. cr-134 at p. 21).  Mina swore that no one had promised him anything to "get you to give up your right to a jury trial other than what is in this plea agreement." (Doc cr-134 at p. 21).  Finally, Mina stated that he understood the consequences of entering a guilty plea and that he had no questions about pleading guilty. (Doc. cr-134 at pp. 25-26). After the prosecutor presented the facts to support the charge against Mina, Mina pled guilty and swore that he was pleading guilty because he was guilty. (Doc. cr-134 at p. 27). This claim does not warrant relief.

Next, Mina alleges that his counsel was ineffective for failing to request an evidentiary hearing.  This claim also has no merit. Mina has not alleged any issues on

which an evidentiary hearing would have been necessary or appropriate. The Court held two hearings in this case: a change of plea hearing, at which Mina pled guilty, and a sentencing hearing. (Doc. cr-134, 133). Mina had an opportunity to speak, through his sworn interpreter, at both hearings. He did not request any type of evidentiary hearing at either hearing, and he has not alleged any legal issues the Court should have addressed in an evidentiary hearing. This claim does not warrant relief.

Next, Mina alleges that his counsel was ineffective for failing to present a downward departure for collateral consequences pursuant to 18 U.S.C. § 3553(a) and (b), USSG § 5K2.0(a)(1)-(4). This claim has no merit because counsel did argue for a downward departure at Mina's sentencing hearing. Furthermore, the Court specifically stated that it considered the 18 U.S.C. § 3553 factors in sentencing. (Doc. cr-133 at p.17) This claim does not warrant relief.

Next, Mina alleges that his counsel was ineffective for failing to argue against the mandatory sentencing scheme that is now unconstitutional. This claim also has no merit. In *United States v. Booker,* 543 U.S. 220 (2005), the United States Supreme Court held that the sentencing guidelines were advisory. Mina stated that his attorney had reviewed the Presentence Investigation Report (PSR) with him. Paragraph 13, page 3 of the PSR reads:

> 13. The Probation Office used the November 1, 2004 edition of the Guidelines Manual in determining the applicable guideline range. In accordance with United States v. Booker and Fanfan, the Court must consider the advice of, but is not bound by, the federal sentencing guidelines. In determining the particular sentence to be imposed, the Court will also take

into account the factors listed in 18 U.S.C. § 3553(a).[1]

Mina was aware that he was being sentenced pursuant to <u>advisory</u>, not mandatory guidelines. It was not ineffective for counsel not to argue against an unconstitutional mandatory sentencing scheme in Mina's case because the Court knew the Guidelines were advisory. The PSR clearly states that the guidelines were advisory, not mandatory. Furthermore, the Court reiterated, at sentencing, that the guidelines were advisory.

Next, Mina alleges that counsel was ineffective for failing to "attain a minor or minimal role as promised and to receive any leniency or benefits for entering into a plea agreement that yielded no benefits." This claim also has no merit. Mina has not alleged any facts to support his claim that he was promised a minor or minimal role for pleading guilty. At the change of plea hearing, Mina, under oath, swore that no one had promised him anything to "get you to give up your right to a jury trial other than what is in this plea agreement." (Doc cr-134 at p. 21). The plea agreement does not contain any language promising Mina a minor role. Counsel argued for a minor role at sentencing but was unsuccessful in his argument.

Contrary to Mina's contention, he did receive a benefit for entering into the plea agreement. In paragraph 9 of the plea agreement, the Government stated that, at sentencing, it would not oppose Mina's request for a two level downward departure for acceptance of responsibility, pursuant to USSG § 3E1.1(a). In addition, the Government

---

[1] After *United States v. Booker*, 543 U.S. 220 (2005), a district court must calculate correctly the advisory Sentencing Guidelines range and then, using the section 3553(a) sentencing factors, the court can impose a more severe or more lenient sentence as long as it is reasonable. *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir.2005). A sentence within the advisory guidelines range is not per se reasonable, *United States v. Talley*, 431 F.3d 784, 786 (11th Cir.2005); but "ordinarily we would expect a sentence within the Guidelines range to be reasonable." *Id.* at 788. Reasonableness review is "deferential." *Id.*

stated that, if Mina complied with the provisions of USSG § 3E1.1(b), the Government would move for a downward adjustment of one additional level.  In addition, in paragraph 10 of the plea agreement, the Government stated that, at sentencing, the Government would not oppose Mina's request that he receive a sentence at the low end of the applicable guidelines range. In fact, Mina received a sentence that was below the low end of the applicable guidelines range and the Court stated that Mina's entering a plea agreement was a major factor in his receiving this sentence:

> The 121 months is essentially one level less than the advisory guidelines, and I've imposed that non-guideline sentence considering the 3553 factors, the nature and circumstances of the offense, the history and characteristics of the defendant, specifically the fact that you <u>entered a plea pursuant to a plea agreement</u>, and also the other factors under 3553. (Emphasis added)

(Doc. cr-133 at p. 17)

Mina has not shown that his attorney was ineffective for failing "to attain a minor or minimal role as promised" and "to receive any leniency or benefits for entering into a plea agreement that yielded no benefits."  This claim does not warrant relief.

Finally, Mina alleges that his counsel was ineffective for failing to request proof of criminal jurisdiction, subject matter jurisdiction, territorial jurisdiction and exclusive jurisdiction. This claim has no merit.  At the change of plea hearing, the prosecutor read the facts that supported count two of the indictment. (Doc. cr-134 at pp. 22-25).  Mina admitted that the facts were true. (Doc. cr-134 at p. 25)  Then, the Magistrate Judge asked:

> Mr. Mina, sir, how do you plead to Count 2 of the Indictment which charges you with conspiracy to possess with intent to distribute more than five kilograms of cocaine while aboard a vessel <u>subject to the jurisdiction of the United States</u>, in violation of U.S. law?  How do you plead; guilty or not guilty? (Emphasis added)

Mina pled guilty, admitting that the vessel, and he, was subject to the jurisdiction of

the United States. (Doc. cr-134 at p. 26). Furthermore, in the Offense Conduct section of the PSR, the United States Probation Officer stated: "None of the crew members claimed to be the master of the vessel, nor did anyone claim nationality for the vessel. As such, the go-fast was assimilated to be stateless, that is a vessel without nationality and therefore, subject to the jurisdiction of the United States." (PSR at p. 2, ¶ 7). Mina cannot fault his counsel for failing to challenge jurisdiction when Mina admitted, by pleading guilty in open court, that the Court had jurisdiction. (Doc. cr-134 at p. 26).

Because none of Mina's ineffective assistance of counsel claims have merit, ground one does not warrant relief.

## Ground Two

Mina alleges that a departure for minor role is warranted. First, this claim is not a 28 U.S.C. § 2255 issue. *See United States v. Ryan,* 289 F.3d 1339 (11th Cir. 2002). Second, the claim has no merit. Mina was not entitled to a minor role reduction.

Section 3B1.2(b) of the United States Sentencing Guidelines allows for a two-level reduction in a defendant's base offense level if the sentencing court determines that the defendant was a minor participant in the offense. A minor participant is a participant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b), comment. (n.5.). In *United States v. De Varon*, 175 F.3d 930 (11th Cir.1999), the Eleventh Circuit set out two measurements that inform the sentencing court's mitigating-role-in-the-offense determination: (1) the defendant's role against the relevant conduct for which he has been held accountable; and (2) the defendant's role as compared to that of other participants in his relevant conduct. *Id.* at 940. About the first measurement, De *Varon* counsels that "[o]nly if the defendant can establish that [he] played

a relatively minor role in the conduct for which [he] has already been held accountable-not a minor role in any larger criminal conspiracy-should the district court grant a downward adjustment for minor role in the offense." *Id.* at 944. About the second measurement, *De Varon* counsels that this relative culpability inquiry includes "only those participants who were involved in the relevant conduct attributed to the defendant. The conduct of participants in any larger criminal conspiracy is irrelevant." *Id.* The first measurement is the more important and, in many cases, may end the inquiry. *Id.* at 945.

In Mina's case, the record supports the Court's decision to deny his request for a minor-role reduction. At the sentencing hearing, counsel argued for a minor role reduction and the Court asked the prosecutor to respond:

> Okay, Ms. Croff, this is the first defendant that was on this go-fast boat that I have sentenced. I have a co-defendant chart which tells me that Manuel Estupinan – although it doesn't say that in the Presentence Report [sic] Manuel Estupinan was the captain; is that right?
>
> MS. CROFF: That's correct, Your Honor.
>
> THE COURT: Okay. Any difference between Mr. Mina, Mr. Soliman and Mr. Liobar Estupinan?
>
> MS. CROFF: No, Your Honor.
>
> Uh, we would agree that Mr. Mina shared equal responsibility with Mr. Soliman and Mr. Liobar Estupinan in that all three of them were essentially crew members on this go-fast vessel. Uh, but in addition to being a -- a simple deckhand, uh, they were also responsible for handling this 5800 pounds of cocaine that was being transported.
>
> Uh, and the Government is not [sic] by no means asserting that Mr. Mina was the owner of these drugs, that he was an organizer of the trip, uh, or had any participation in the actual sale of the cocaine. But we have not charged him with the overall conspiracy, uh, that this cartel is -- is no, uh, doubtedly [sic] responsible for trafficking.
>
> We've only charged and Mr. Mina's only pled guilty to conspiring to

9

possess this particular boat load of cocaine, and so it's the Government's position that the proper analysis when you're compaing culpability amongst the coconspirators is to compare Mr. Mina to the other people on board this could [sic] go-fast. In particular, the other two deckhands – or crew members on board this vessel.

Uh, although Mr. Mina and his other coconspirators were only responsible for one leg of this trip, it's a pretty big leg. They were responsible for transporting 118 bales from Colombia across the eastern Pacific Ocean, hundreds of miles. When they were interdicted, they were about 160 nautical miles southwest of Ecuador.

So, uh, this is a pretty big responsibility. Uh, Mr. Mina was offered 20,000,000 pesos for his participation in this trip, [sic] he received a down payment of 10,000,000 pesos and –

. . . .

MS. CROFF: Uh, well, Your Honor, if you take that into consideration that maybe it was 10,000 U.S. Dollars, but it's far more than a typical crew member or deckhand would be paid for a fishing trip or a cargo trip in and around Colombia.

Uh, and, Your Honor, the -- the -- the burden of proof is on the defendant to prove that he is less culpable than the others on board this particular vessel. I think he has not done that, and therefore the Government would argue that he's not entitled to a minor role.

(Doc. cr-133 at pp. 9-11)[2]

The record supports the denial of a minor role reduction and ground two does not warrant relief.

## Ground Three

Mina alleges that a departure for extraordinary family circumstances and for collateral consequences due to deportability is warranted. Mina claims that his family is suffering a great hardship without him and:

---

[2] Furthermore, the PSR (page 3 at ¶ 17) did not include any adjustment for role in the offense, and the Court overruled Mina's objections to his claim that he was eligible for either a two or three level role reduction based on his minimal or minor role as a crew member on the boat.

10

relied heavilly on him for guidance and financial support. With the added deterrent of separation of family, the punishment factor is severely increased and the punishment extends to the family. (18 U.S.C. § 3553(b)). Non deportable inmate's families will not suffer the same circumstances, a factor not accounted for in the sentencing guidelines or at sentencing. Defendant's 14th Amendment rights are being violated. The Equal Protection clause is to guarantee that similar individuals are dealt with in a similar manner by the Government.

Due to the defendant's deportability, he is ineligible for participation or incentives related to the RESIDENTIAL DRUG ABUSE PROGRAM, HALFWAY HOUSE or CCC, MINIMUM SECURITY, or CAMP PRISON, INCARCERATION WITHIN 500 MILES OF FAMILY TIES, and as proven with his current detention, placement in a real BOP facility which has far higher quality food, education, medical, library, rehabilitative programs, higher pay grades (E.I. BOP's UNICOR work program pay upwards of $800 monthly, at CCA (prison for profit), he earns approximately $15-$18 a month) etc. Aside from being ineligible for all of the above, the differences between BOP and a prison for profit are enormous. This is a factor beyond Mr. Paredes control, kept silent from the public, yet allowed by law. These inequalities are just some of the many COLLATERAL CONSEQUENCES DUE TO DEPORTABILITY. The defendant has a PSF (Public Safety Factor) designation, rendering him ineligible for a minimum security facility, unlike a non deportable inmate, who commits the same offense, who was equally or more culpable and received an identical sentence.

Like ground two, this claim is not a 28 U.S.C. § 2255 issue. *See United States v. Lahoud,* 178 Fed. Appx. 926, 928 (11th Cir. 2006). Furthermore, the claim has no merit. The collateral consequences that a defendant faces because he is a deportable alien generally do not support a departure. *Id. See also*, *United States v. Maung,* 320 F.3d 1305 (11th Cir. 2003) (downward departure sentence could not properly be based on desire to shield defendant from immigration consequences of conviction). In *United States v. Restrepo*, 999 F.2d 640 (2d Cir. 1993), the district court relied on collateral consequences stemming from the defendant's status as an alien to support a downward departure. These collateral consequences included ineligibility for assignment to lower-security facilities; post imprisonment detention pending removal, and removal itself. *Id.* at 644-47. The Second

Circuit found that those collateral consequences were insufficient to support a downward department and reversed the downward departure on direct appeal.

Mina was not eligible for a downward departure based on extraordinary family circumstances and collateral consequences due to deportability.

Ground three does not warrant relief.

## Ground Four

Mina alleges that he entered into a plea agreement under false pretenses. He alleges:

> Defendant entered into a plea agreement waiving his right to appeal. He received 121 months, the same or more than other individuals with similar 10 yr. minimums but who had not entered into a plea agreement. In the majority of cases, even the non-deportable defendants received 2 level departures for a plea agreement and additional 2 level departures for safety valve, halfway house, CCC camp status (BOP facilities), moved within 500 miles of family, education, rehabilitation, drug programs, RDAP, pre-release preparation for reentry into society . . . Defendant is deprived of all these rights afforded to non-deportables and all without jurisdiction.

Mina's claims are simply not true. Mina's 121-month sentence is essentially one level less than the advisory guidelines. In imposing the sentence, the Court considered the 18 U.S.C. § 3553 factors, the nature and circumstances of the offense, the history and characteristics of the defendant, and specifically the fact that Mina entered a plea pursuant to a plea agreement.

In a case directly on point, *Minh v. United States*, 2006 WL 2444085 *3 (S.D. Ga. Aug. 22, 2006), a defendant disputed the BOP's use of a detainer from the Bureau of Customs and Immigration Enforcement ("BICE") in determining his eligibility for prison programs or early release. The *Minh* Court held that claims of this sort are normally brought in a civil rights action and cited *Stevens v. Heard*, 674 F.3d 320, 323 (5th Cir.1982)

(state prisoner's complaint challenging "the practice of considering any detainers in determining eligibility for prison programs" properly brought under 42 U.S.C. § 1983).

Regardless, Mina's arguments fail because Mina has not shown the violation of any constitutional right. Mina has no due process liberty interest in early release. See, e.g., *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir.1998). More generally, inmates do not have any federal constitutional right to participate in rehabilitative programs. Nor does an inmate have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison. *See, e.g., McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no right to incarceration at any particular prison). In sum, Mina has not shown that his Fifth Amendment due process rights have been violated. *See also, Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (Federal prisoners have no due process right to eligibility for rehabilitative programs.); *Murdoch v. Washington*, 193 F.3d 510, 513 (7th Cir.1999) (no protectible liberty or property interest in attending rehabilitation program); *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir.1992)(no right to educational or vocational opportunities); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir.1989) (no liberty interest in inmate classification or eligibility for work programs); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir.1987) (no right to particular inmate classification or eligibility for rehabilitative programs); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir.1980) (same); *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir.1977) ("[A]n inmate does not have a federal constitutional right to rehabilitation."); *Lyle v. Sivley*, 805 F.Supp. 755, 759-60 (D. Ariz. 1990) (holding that Due Process Clause does not give federal prisoners a protected right to participate in drug treatment programs).

In *Minh,* the Court held that BOP's use of BICE detainers in deciding prisoners' eligibility for prison programs and early release did not offend equal protection principles. Courts have routinely upheld the Bureau's consideration of BICE detainers in making classification decisions regarding inmates, including such issues as security level and eligibility for prison programs.

Minh's argument that deportable aliens are categorically denied transfers to halfway houses is misleading. As the Ninth Circuit has pointed out, the BOP excludes all inmates -- not just aliens -- who are subject to detainers from participation in community-based treatment programs. *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir.1999). The "detainer exclusion," which is based upon the rationale that prisoners with detainers pose an increased flight risk, does not single out aliens and does not violate the Equal Protection Clause. *Id. See, e.g., Franklin v. Berry*, 909 F.Supp. 21, 27-28 (D . D.C.1995)(upholding Bureau's reliance upon detainers in assigning security classifications to aliens); *Limas v. McNary*, 799 F.Supp. 1259, 1263 (D. Mass.1992)(Bureau's decision to deny deportable aliens prerelease transfer to minimum security institutions did not implicate any constitutional right); *Isaraphanich v. Coughlin*, 715 F.Supp. 119, 120-21 (S.D. N.Y. 1989)(Bureau's reliance on detainers to deny aliens access to prison programs did not violate the Equal Protection Clause); *Femandez-Collado v. I.N.S.*, 644 F.Supp. 741, 744 (D. Conn.1986)("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."), *afield* 857 F.2d 1461 (2d Cir. 1987).

Mina's argument that aliens are categorically denied participation in drug abuse treatment programs is also misleading. The Bureau does not deny aliens participation in

substance abuse treatment programs; rather, the Bureau denies aliens subject to BICE detainers consideration for early release on account of their completion of a residential drug abuse treatment program. See 28 C.F.R. § 550.58(a)(1)(i). Of note, the Bureau clearly possesses the power to categorically exclude inmates from consideration for early release. *See Lopez v. Davis*, 531 U.S. 230, 239-44 (2001) (upholding a Bureau regulation categorically excluding, based upon its general discretion under the statute to grant or deny early release, prisoners convicted of otherwise nonviolent offenses that involved use of a firearm). Furthermore, the Bureau may aim such an exclusion at deportable aliens if it has a rational basis for its decision. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976).

Finally, Mina is correct that his deportability prevents him from participating in Federal Prison Industries ("UNICOR") work assignments. See 28 C.F.R. § 345.35(a). Nevertheless, the Bureau clearly has a rational basis for excluding deportable aliens from consideration for rehabilitative programs, including UNICOR assignments. As one court has explained:

> The [Bureau] does not act in violation of Fifth Amendment equal protection standards in providing programs for prisoners who have a lawful right to remain in the country, whose rehabilitation is of interest to this country and the policy of this society, and in not providing programs for deportable aliens who have no right to be in the country and whom Congress has an interest in deterring from entering or returning .... There is no equal protection violation in different treatment of aliens as to rehabilitation and other programs. The United States may treat deportable aliens and citizens differently. There is no primary interest in reformation of deportable persons. That's an interest of the country to which they may be deported . Deterring further illegal reentry is a legitimate interest of the United States as well as saving expenses. Also, special security may be justified to avoid flight to the border. In the case of American citizens, or lawful residents, reformative programs are a worthy correctional consideration.

*Ruiz-Loera v. United States*, 2000 WL 33710839, at *2 (D. Utah June 23, 2000) (citations

15

omitted); *see also United States v. Tamayo*, 162 Fed. Appx. at 816, 2006 WL 52792, at *3 ("[T]here is a rational basis to deem deportable aliens, who will be sent out of the country after the term of their sentence, ineligible for programs geared toward rehabilitating prisoners who will re-enter society after their release from confinement.").

Finally, Mina's allegation that he received the same sentence as the other Defendants who did not enter into a plea agreement and give up their right to appeal is incorrect. The docket sheet shows that other Defendants received sentences of 135 months incarceration.

None of Mina's claims in ground four have merit and ground four does not warrant relief.

Accordingly, the Court orders:

That Mina's amended motion to vacate (Doc cv-4;cr-135) is denied. The Clerk is directed to enter judgment against Mina in the civil case and to close that case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473,

484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 5, 2007.

SUSAN C. BUCKLEW
United States District Judge

AUSA:  Christopher Francis Murray

Redis Mina, Pro se